**Christopher Connley DAVIS, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–09–00192–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

June 29, 2010.

Joseph W. Varela, Houston, for appellant.

Michelle R. Townsend, Houston, for the State.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## OPINION

WILLIAM J. BOYCE, Justice.

A jury found appellant Christopher Connley Davis guilty of aggravated robbery and assessed his punishment at ten years' confinement. Appellant appeals from this first degree felony conviction, and we affirm.

## Background

Around 11:30 p.m. on April 20, 2008, complainant Jonathan Diaz went to a nearby store to purchase diapers for his daughter. When he returned to his apartment complex, the complainant felt uneasy when he noticed a man sitting in the bushes. Complainant observed the man in his rear view mirror getting out of the bushes and then walking past the passenger side of complainant's vehicle. As the complainant exited his car, the man stopped walking, turned around, reached under his shirt, pulled out a gun, and pointed it at the complainant. The complainant heard the gunman cock his gun and state, "You know what this is. Give me what you got." The complainant gave the gunman his money clip, cell phone, and keys. The gunman asked the complainant for cash, but the complainant told the gunman that he did not have any cash.

Appellant, also holding a gun in his hand, ran up to the gunman and asked him if he had retrieved any cash from the complainant. When the gunman told appellant that the complainant did not have any cash, appellant stated, "I feel deceived.... I am going to shoot him." Ap-

pellant noticed that the complainant was staring at him from this close distance, so appellant covered his face with his t-shirt and told the complainant to stop looking at him. Appellant kept telling the other gunman that he would shoot the complainant and that he did not care.

The gunman tried to convince appellant not to shoot the complainant. The gunman looked at the diaper box the complainant had purchased and told appellant, "[N]o, no let's not do it. There's no cash on him. He don't have anything. Let's just go. He is [sic] probably got a kid." The complainant looked at appellant—who was still pointing a gun at the complainant—and offered to let appellant search him. Appellant then searched the complainant. When appellant could not find any cash on the complainant, he kept the complainant's cell phone but threw away the complainant's keys. Appellant instructed the complainant to look down on the ground and threatened to shoot the complainant if he looked up. Appellant and the gunman ran away. The complainant called the police.

The complainant later identified appellant as one of the robbers on a photo spread; the complainant confirmed he was one hundred percent sure appellant robbed him. The complainant also identified appellant at trial, testifying he had "no doubt at all" that appellant robbed him. A jury found appellant guilty of aggravated robbery and assessed his punishment at ten years' confinement. Appellant timely appealed, raising six issues.

### Analysis

### I. Voir Dire

■ In his first issue, appellant argues that the trial court "erred in refusing a proper question on jury voir dire." The State contends that the trial court properly refused the question because it was an improper commitment question.

■ The trial court has broad discretion over the process of selecting a jury. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim.App.2003) (en banc). We will not disturb the trial court's ruling on the propriety of a particular question during voir dire absent an abuse of discretion. *Id.*

■ A voir dire question is proper if it is crafted to uncover a prospective juror's preexisting prejudice or bias on an issue applicable to the case. *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex.Crim.App. 2005) (en banc). A commitment question is one that commits a prospective juror to resolve or to refrain from resolving an issue a certain way after learning of a particular fact. *Lydia v. State*, 109 S.W.3d 495, 498 (Tex.Crim.App.2003) (citing *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim.App.2001)). A voir dire question becomes an improper commitment question when it is intended to create a bias or prejudice in a venire member before the prospective juror has heard the evidence. *Sanchez*, 165 S.W.3d at 712.

■■ To determine whether a question is an improper commitment question, we consider whether the question (1) is a commitment question; and (2) includes only those facts that lead to a valid challenge for cause. *Standefer v. State*, 59 S.W.3d 177, 179–82 (Tex.Crim.App.2001). Accordingly, a commitment question is improper when (1) the law does not require the commitment, such that a juror would not be disqualified for cause by being influenced by a particular fact or by having a particular attitude or opinion; or (2) it also includes facts in addition to those necessary to establish a challenge for cause. *Sanchez*, 165 S.W.3d at 712.

In this case, appellant's trial counsel inquired, "Let's talk about factors in a sec-

tion of the sentence in a case of aggravated robbery with a deadly weapon, what factors do y'all think are important?"[1] This question, although open-ended, is a commitment question because it "asks the prospective juror[s] to set hypothetical parameters" for their decision-making. *See Standefer,* 59 S.W.3d at 180 (question asking "What circumstances in your opinion warrant the imposition of the death penalty?" was a commitment question).

Trial counsel's commitment question was improper because the law does not require a commitment. *See Sells,* 121 S.W.3d at 757–58; *Standefer,* 59 S.W.3d at 181–82. A "prospective juror is not challengeable for cause simply because he does not consider a particular type of evidence to be mitigating." *Standefer,* 59 S.W.3d at 181. Whether a juror considers a particular type of evidence to be mitigating is therefore not a proper inquiry. *Id.* at 181–82; *see also Sells,* 121 S.W.3d at 757–58. Trial counsel's question was an improper commitment question, and the trial court acted within its discretion by refusing to allow trial counsel to ask it. *See Sells,* 121 S.W.3d at 757–58; *Standefer,* 59 S.W.3d at 181.

We overrule appellant's first issue.

## II. Admission of Evidence During Punishment Phase

In his second through sixth issues, appellant contends the trial court erred by allowing the State to introduce evidence of (1) another aggravated robbery; (2) appellant's participation in the spray-painting of graffiti depicting gang symbols; (3) appellant's poor grades in high school; (4) appellant's school disciplinary records; and (5) appellant's jail disciplinary record. We address each issue in turn.

We review the admission of evidence of extraneous misconduct or bad acts under an abuse of discretion standard. *Mitchell v. State,* 931 S.W.2d 950, 953 (Tex.Crim. App.1996) (en banc); *Brooks v. State,* 76 S.W.3d 426, 435 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

### A. Aggravated Robbery

In his second issue, appellant contends that the trial court "erred in admitting an extraneous robbery during the punishment phase" because the complainant's identification of appellant as the robber was too tentative. Appellant argues that the trial court erred in its initial determination that a jury reasonably could find beyond a reasonable doubt that appellant committed the extraneous offense against the complainant in that robbery.

The admissibility of evidence at punishment is largely guided by article 37.07 of the Texas Code of Criminal Procedure. *Haley v. State,* 173 S.W.3d 510, 513 (Tex. Crim.App.2005). Under section 3 of article 37.07, the State may offer into evidence any matter the trial court deems relevant to sentencing. Tex.Code Crim. Proc. Ann. art. 37.07 § 3(a) (Vernon 2009). The State may introduce evidence of an extraneous offense provided that it is proven beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. *Id.*

Evidence is relevant to sentencing within the meaning of the statute if the evidence is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State,* 203 S.W.3d 837, 842

1. Appellant asserts the actual statement made to the venire panel was "in assessing the sentence" and not "in a section of the sentence" as reflected in the record. Even if appellant were correct and this court could accept his assertion as true, the difference in wording would not affect our analysis.

(Tex.Crim.App.2006). The trial court "is deemed the authority on the threshold issue of admissibility of relevant evidence during the punishment phase of a trial." *Mitchell*, 931 S.W.2d at 953. Unless the extraneous offense evidence is such that the jury can rationally find the defendant criminally responsible for the extraneous offense, the trial court is not permitted to admit it at a punishment hearing. *Smith v. State*, 227 S.W.3d 753, 759–60 (Tex. Crim.App.2007). Whether an extraneous offense was established beyond a reasonable doubt, however, is a question of fact for the jury rather than a preliminary question of admissibility for the trial court. *Mitchell*, 931 S.W.2d at 953.

Outside the jury's presence, the State announced its intention to call the extraneous-offense complainant Jose Vasquez as a witness regarding another aggravated robbery appellant allegedly committed. Appellant objected to Vasquez testifying because he "cannot identify ... [appellant] as the one who robbed him." Appellant also stated, "[O]ur position is that until the State can meet the threshold to convince you that they can prove this extraneous beyond a reasonable doubt, then it shouldn't come into the jury at all." The State made the following oral proffer:

> Judge, the State proffers that the defendant committed an aggravated robbery against Jose Vasquez and that Jose Vasquez will say when shown a photospread including the defendant's picture picked out the defendant and notated that he was pretty sure that that was the person that robbed him with a gun.
>
> \* \* \*
>
> After ... [Jose Vasquez] picked the defendant out of that photospread that officer additionally showed him about four or five other photospreads including multiple potential suspects and he indicated to that officer that no, it was the

guy in the first photospread that I identified meaning the defendant in this case.

Appellant again objected and stated, "The jury cannot find rationally beyond a reasonable doubt that ... [appellant] is involved in that [robbery] based on tentative identification." The trial court overruled appellant's objection and stated, "As to the State's proffer of the evidence regarding Mr. Vasquez, the Vasquez robbery, the Court finds that the—and in making it a threshold examination of the admissibility of that evidence, the Court finds that the State has done so in its proffer."

The State's proffer shows that Vasquez would testify before the jury that (1) an aggravated robbery was committed against him; (2) he initially identified appellant, although not unequivocally, as the person who committed the aggravated robbery against him using a gun; and (3) after viewing four or five additional photo spreads of multiple potential suspects, he positively identified appellant as the person who robbed him.

Because a jury reasonably could credit Vasquez's testimony that an aggravated robbery was committed against him, and because he positively identified appellant as the robber, the trial court did not abuse its discretion by concluding that the testimony described in the State's proffer would enable a rational jury to find beyond a reasonable doubt that appellant is criminally responsible for committing the extraneous offense. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982) (en banc) (a complainant's credible identification of the defendant constitutes legally sufficient evidence to support a jury verdict); *Walker v. State*, 180 S.W.3d 829, 832–33 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (a jury could rationally find that appellant committed aggravated robbery based on an eyewitness's positive

identification of appellant as the one who committed the robbery, even though complainant was unable to identify appellant as the robber); *Davis v. State*, 177 S.W.3d 355, 358–59 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (en banc) (a jury could rationally find that appellant committed aggravated robbery based only on the complainant's positive identification of appellant as the one who committed the offense); *Johnson v. State*, 176 S.W.3d 74, 77 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (a jury could rationally find that appellant committed aggravated robbery based on the complainant's positive identification of appellant and testimony that appellant committed the offense).

Additionally, "[e]ven a total failure ... to identify the defendant on one occasion goes only to the weight of that person's testimony, not its admissibility." *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986) (en banc). Based on the State's proffer of evidence, the trial court did not err in concluding that a rational trier of fact could find beyond a reasonable doubt that appellant committed the extraneous robbery. We conclude that the trial court acted within its discretion in allowing the evidence of the extraneous aggravated robbery to be introduced before the jury.

We overrule appellant's second issue.

## B. Vandalism Involving Graffiti Depicting Gang Signs

In his third issue, appellant argues that the trial court abused its discretion by allowing the State to introduce evidence "that Appellant spray painted graffiti [depicting gang signs] on the walls of an apartment" without providing appellant notice as required by article 37.07.

Article 37.07 provides, in part, that upon a finding of guilt, evidence may be offered by either party "as to any matter" the trial court "deems relevant to sentencing."

Tex.Code Crim. Proc. Ann. art. 37.07 § 3(a). This evidence includes "the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried," and "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible." *Id.* Article 37.07 section 3(g) provides for admission of extraneous offense evidence if the State gives timely notice of its intent to use that evidence in the punishment phase of trial. *Id.* art. 37.07 § 3(g) (Vernon 2009).

Appellant contends that the State did not provide sufficient notice of its intent to introduce evidence that appellant spray-painted graffiti in a vacant apartment, and that the State's open-file policy does not constitute sufficient notice to comply with article 37.07's notice requirement. The State responds that it provided sufficient notice four months prior to trial in its "initial notice of intention to use extraneous offenses and prior conviction" and "specifically disclosed its intention to 'introduce evidence of the Defendant's membership, affiliation, and/or associat[ion] with the street gang, Tree Top Pirus, and opinion evidence relating to the purpose, characteristics, and activity of said street gang in Harris County, Texas.'" However, this notice does not indicate that the State intended to introduce evidence "that Appellant spray painted graffiti [depicting gang signs] on the walls of an apartment."

Assuming for the sake of argument that due to lack of notice, the trial court erred in admitting evidence that appellant was involved in spray-painting gang signs, any such error was harmless. Error in admitting evidence with insufficient notice under article 37.07, section 3(g) is nonconstitu-

tional error. *Apolinar v. State,* 106 S.W.3d 407, 414 (Tex.App.-Houston [1st Dist.] 2003), *aff'd on other grounds,* 155 S.W.3d 184 (Tex.Crim.App.2005); *Roethel v. State,* 80 S.W.3d 276, 281 (Tex.App.-Austin 2002, no pet.); *see McDonald v. State,* 179 S.W.3d 571, 578 (Tex.Crim.App. 2005). A nonconstitutional harm analysis for statutory violations is performed under Texas Rule of Appellate Procedure 44.2(b). *See* Tex.R.App. P. 44.2(b); *Gray v. State,* 159 S.W.3d 95, 97–98 (Tex.Crim.App.2005).

To assess nonconstitutional errors, we examine whether the purpose of the statute or rule violated was thwarted by the error. *Roethel,* 80 S.W.3d at 281 (citing *Ford v. State,* 73 S.W.3d 923, 925–26 (Tex.Crim.App.2002)). The purpose of article 37.07, section 3(g) is to avoid unfair surprise and to enable a defendant to prepare to answer the extraneous offense evidence. *Apolinar,* 106 S.W.3d at 414–15; *Roethel,* 80 S.W.3d at 282; *Nance v. State,* 946 S.W.2d 490, 493 (Tex.App.-Fort Worth 1997, pet. ref'd). This analysis requires examining the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial. *Roethel,* 80 S.W.3d at 282. In determining the latter, appellate courts look at whether the defendant was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence. *Id.*

Nothing in the record indicates that the State acted in bad faith when it failed to comply with article 37.07's notice requirement. There is no indication that the lack of sufficient notice was intended to mislead appellant or prevent him from preparing a defense.

Although appellant's counsel claimed surprise and stated he would ask for a continuance if the State introduced evidence that appellant spray-painted gang signs on the walls of a vacant apartment, his claim of surprise was questionable in light of his admission that the State provided him with an offense report about the aggravated robbery of S.K. Rahmad—a pizza delivery man who had been robbed after being called to the spray-painted vacant apartment. Appellant's counsel acknowledged that the offense report contained information that graffiti had been sprayed on the walls of the vacant apartment at which the alleged Rahmad robbery took place. Appellant's counsel received written notice of the State's intent to introduce the aggravated robbery of Rahmad as an extraneous offense four months before trial. Appellant's counsel also acknowledged that the State had shown him the Rahmad robbery offense report containing information regarding the graffiti at issue.

During the punishment phase, the State called Officer Silva; he testified that he was called to an apartment complex and was then directed to a vacant apartment that was spray-painted with gang-related signs. Officer Silva testified that State's exhibits 20 through 36 were photos that accurately depicted the spray-painted apartment. Officer Silva also testified that he saw spray paint cans in the apartment and that he called the fingerprint division to determine if fingerprints could be lifted from the cans. Appellant's counsel chose not to cross-examine Officer Silva. Appellant's counsel also chose not to cross-examine Officer Truhan, who testified that she was able to lift fingerprints off the cans found in the vacant apartment.

The State called a latent print laboratory administrator, Officer Saldivar, who analyzed the fingerprints on the recovered cans and determined that one of the fingerprints matched appellant's fingerprint. Appellant's counsel effectively cross-examined Officer Saldivar, eliciting that Officer

Saldivar "can't tell by looking at a finger-print on an object when that particular fingerprint was put on" the object.[2]

Appellant does not point to anything in the record that would support the notion that his ability to mount an adequate defense was hindered by the lack of notice; nor does appellant argue on appeal that his ability to prepare cross-examination or mitigating evidence was affected by the lack of notice. Appellant has failed to make any showing of how his defense strategy might have been different had the State notified him of its intent to introduce evidence of the spray-painted gang signs during punishment, or how his defense was "injuriously" affected by the State's lack of notice. *See Hernandez v. State,* 176 S.W.3d 821, 825–26 (Tex.Crim.App.2005).

Because the record does not demonstrate that the lack of notice in this case was the result of prosecutorial bad faith, and because the record shows that the lack of notice did not impair appellant's ability to prepare for the graffiti evidence or otherwise present a defense, we conclude that the lack of notice did not affect appellant's substantial rights.

We overrule appellant's third issue.

### C. Poor Grades

 In his fourth issue, appellant argues that the trial court abused its discretion by allowing the State to introduce evidence of the poor grades he received in school because bad grades do not establish that appellant has a bad character.

Article 37.07 provides, in part, that upon a finding of guilt, evidence may be offered by either party "as to any matter" the trial court "deems relevant to sentencing," and the evidence is not limited to "the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried." Tex.Code Crim. Proc. Ann. art. 37.07 § 3(a).

 Although it is questionable that appellant's poor grades were relevant to determining an appropriate punishment for appellant, any asserted error in admitting evidence of appellant's grades was not harmful. The erroneous admission of evidence is not constitutional error. *Ivey v. State,* 250 S.W.3d 121, 126 (Tex.App.-Austin 2007), *aff'd,* 277 S.W.3d 43 (Tex.Crim. App.2009). We use Texas Rule of Appellate Procedure 44.2(b) to determine whether any alleged error warrants reversal. *Id.* Rule 44.2(b) provides that any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Haley,* 173 S.W.3d at 518. In assessing the likelihood that the jury's verdict was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration and the nature of the evidence supporting

---

**2.** The State also called Officer Richards, who testified that appellant was considered to be a member of the Tree Top Piru Blood Gang and was so listed in the police gang database. Appellant's counsel effectively cross-examined Officer Richards, establishing that any person could be documented as a gang member in the police database "if enough people denounced" that person as a gang member. Appellant's counsel elicited testimony that even counsel could be placed in the police database "if enough people denounced" him "as a gang member." Appellant's counsel also established that appellant did not have a tattoo indicating any gang affiliation, even though "gang members typically have tattoos that ... bare [sic] witness to their allegiance."

the verdict. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000).

During the guilt-innocence phase of the trial, the jury heard the complainant testify that appellant was angry and wanted to shoot him when he found out that the complainant did not have any cash. The complainant testified that appellant stated, "I feel deceived.... I am going to shoot him." The complainant testified that appellant kept telling the other gunman that he would shoot the complainant and that he did not care. The complainant also testified that the other gunman convinced appellant not to shoot the complainant.

During the punishment phase, the complainant's apartment complex manager, Kimberly Vanover, testified that she observed appellant break into an occupied apartment two weeks earlier. Vanover testified that she tried to call the apartment complex security officer, but appellant "snatched" her phone and ran away with it.

During the punishment phase, appellant asked the jury to consider giving him probation. However, when his trial counsel asked appellant to "tell the jury why they should consider giving" him probation, appellant responded, "Cause I feel it really if I was to go to prison, it wouldn't make my [sic] better. And I feel like when you get convicted of a crime, you suppose to learn from it.... But if I was to go to prison, I don't even—I ain't going to learn from it. I am going to [be] more mad than anything."

Appellant also admitted having discipline problems in school; he "was messing up bad ... was getting into trouble, hanging out with the wrong people." Appellant testified that his school discipline record included: after school detentions, in-school restrictions, and short-term suspensions for disruptive behavior; in-school restriction for breaching his school contract; after school detention for tardiness; in-school restriction for theft; short-term suspension for fighting; warning for harassment of a female student; and long-term suspension for possession of drugs.

Appellant testified that he was suspended for one semester because he was caught with marijuana in school. He testified that he "just use[d] marijuana" every other day but that his mother did not know because he would smoke outside. Appellant testified that he "got caught with a whole bunch of" Xanax pills in school. He also testified that he was expelled from school in January 2008 and sent to an alternative school. Appellant's step-father confirmed that appellant got "in trouble for drugs;" he also testified that appellant had a prior drug conviction.

Appellant showed no remorse for his actions. Instead, appellant claimed that the complainant lied when he testified that appellant had pointed a gun at him and had threatened to shoot him. When the State asked appellant, "So, even though they found you guilty, you don't believe that you were guilty; and you are telling them that they were wrong?[,]" appellant replied, "I know I wasn't guilty." Also, in response to the State's question whether appellant agreed that probation would not be appropriate punishment for an aggravated robbery, appellant replied, "If you did the crime, I mean, you shouldn't be afraid to go do the time basically, so."

Lastly, the punishment range for an aggravated robbery is five to 99 years' confinement. Tex. Penal Code Ann. §§ 12.32(a); 29.03(b) (Vernon 2003). The jury assessed appellant's punishment at ten years' confinement—the low end of the punishment range.

Based on the record before the court, appellant cannot demonstrate that he received a longer sentence or was harmed by

the admission of his poor grades. Therefore, any error in the trial court's admission of this evidence was not reversible error.

We overrule appellant's fourth issue.

### D. School Disciplinary Record

In his fifth issue, appellant contends that the trial court erroneously allowed the State to introduce appellant's school disciplinary record during the punishment phase of the trial because he was not given notice of the State's "intent to introduce evidence that [a]ppellant had bad grades or school discipline problems" as required by Code of Criminal Procedure article 37.07.

Contrary to appellant's contention, the record before the court establishes that the State filed the required article 37.07 notice approximately four months before trial. The notice disclosed the State's intention to introduce evidence that appellant "was expelled from Westside High School in January 2008 for fighting, skipping classes, and disrupting classes," and that appellant "failed English 1A, English 2A, Spanish 1A, World History A, and Introduction to Physics & Chemistry A at Westside High School for the 2006–2007 school year." Therefore, appellant's fifth issue is without merit.

We overrule appellant's fifth issue.

### E. Jail Disciplinary Record

■ In his sixth issue, appellant argues that the trial court erred by allowing the State to introduce appellant's jail disciplinary record during the punishment phase of the trial because he was not given notice as required by article 37.07 of the Code of Criminal Procedure.

The State responds that appellant's argument is without merit because appellant's trial counsel admitted to the trial court that he received notice of the State's intention to introduce appellant's jail disciplinary record. We disagree.

The State filed its notice of intention to introduce numerous "extraneous offenses, wrongs, acts, and prior convictions;" the notice did not list appellant's jail disciplinary record as one of the items the State intended to introduce.

During the punishment phase of the trial, appellant's trial counsel objected to the introduction of exhibits 37 and 38 based on a lack of notice under article 37.07; the exhibits contained appellant's jail disciplinary record. Trial counsel stated: "We also have notice issues on [exhibits] 37 and 38, Your Honor. On the 37[.] 07 notice, they didn't give us notice that they intended to introduce evidence of a jail disciplinary problem or of a—bad grades in Oklahoma." The State responded that "those records in their entirety have been on record. The State has given defense counsel a notice of intent to use these business records and introduce them." The trial court then asked appellant's trial counsel: "Were you given notice of the State's intent to offer these exhibits?" Trial counsel responded: "They did file that notice and serve me with a copy."

Trial counsel's response is not an admission that he received notice of the State's intention to introduce appellant's jail disciplinary record. Rather, trial counsel's response indicates that he received the State's notice of intention as filed by the State—a notice that did not include appellant's jail disciplinary record as one of the "extraneous offenses, wrongs, acts" it intended to introduce during the punishment phase.

Accordingly, the State did not provide appellant with notice of its intent to introduce appellant's jail disciplinary record as required by article 37.07, section 3(g),

which provides for the admission of extraneous offense evidence if the State gives timely notice of its intent to use that evidence in the punishment phase of trial. Tex.Code Crim. Proc. Ann. art. 37.07 § 3(g). Because the State failed to provide the required notice, the trial court erred in admitting the evidence.

■ As we have stated above, error in admitting evidence with insufficient notice under article 37.07, section 3(g) is nonconstitutional error. *Apolinar,* 106 S.W.3d at 414; *Roethel,* 80 S.W.3d at 281; *see McDonald,* 179 S.W.3d at 578. A nonconstitutional harm analysis for statutory violations is performed under Texas Rule of Appellate Procedure 44.2(b). *See* Tex. R.App. P. 44.2(b); *Gray,* 159 S.W.3d at 97–98.

To assess nonconstitutional errors, we examine whether the purpose of the statute or rule violated was thwarted by the error. *Roethel,* 80 S.W.3d at 281 (citing *Ford,* 73 S.W.3d at 925–26). The purpose of article 37.07, section 3(g) is to avoid unfair surprise and to enable a defendant to prepare to answer the extraneous-offense evidence. *Apolinar,* 106 S.W.3d at 414–15; *Roethel,* 80 S.W.3d at 282; *Nance,* 946 S.W.2d at 493. This analysis requires examining the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial. *Roethel,* 80 S.W.3d at 282. In determining the latter, we look at whether the defendant was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence. *Id.*

On cross-examination during the punishment phase of the trial, the State admitted appellant's jail disciplinary record into evidence showing that appellant lost seven days of visitation and commissary privilege for assaulting another inmate. The State, however, did not spend much time questioning appellant regarding his jail disciplinary problems, and appellant admitted getting into a fight with another inmate.

Neither in the trial court nor on appeal did appellant claim that he was surprised when the State proffered evidence of appellant's jail disciplinary record. Nothing in the record suggests that appellant's ability to mount an adequate defense was hindered by the lack of notice. Appellant has failed to make any showing of how his defense strategy might have been different had the State notified him of its intent to introduce his jail disciplinary record during the punishment phase, or how his defense was "injuriously" affected by the State's lack of notice. *See Hernandez,* 176 S.W.3d at 825–26.

We find no indication of bad faith in the State's failure to provide notice of its intent to introduce appellant's jail disciplinary record. Although the State's notice did not comply with article 37.07, section 3(g)'s requirements, there is no indication from the record that the omission was intended to mislead appellant or prevent him from preparing an adequate defense.

Because the record does not reveal that the lack of notice in this case was the result of prosecutorial bad faith, and because the record shows that the lack of notice did not impair appellant's ability to present a defense, we conclude that the lack of notice did not affect appellant's substantial rights.

We overrule appellant's sixth issue.

### Conclusion

The judgment of the trial court is affirmed.