

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1400-10

### CHRISTOPHER CONNLEY DAVIS, Appellant

### v.

### THE STATE OF TEXAS

### ON DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

Womack, J., delivered the opinion of the Court, in which, Meyers, Price, Johnson, Keasler, Hervey, and Cochran, JJ., joined. Keller, P.J., filed a dissenting opinion.

The appellant was convicted of aggravated robbery, and a jury sentenced him to ten years' confinement. The Fourteenth Court of Appeals affirmed.[1] The appellant petitioned for review from this Court, contending that the Court of Appeals erred in holding that his voir dire question was an improper commitment question. We shall reverse and remand to the Court of Appeals for further consideration.

---

[1] *Davis v. State*, 315 S.W.3d 908 (Tex. App.–Houston [14th Dist.] 2010).

## I. Background

During voir dire, defense counsel asked the jury panel, "Let's talk about factors in [assessing] the sentence in a case of aggravated robbery with a deadly weapon, what factors do y'all think are important?" Without an objection from the State, the trial court interjected, "[Counsel], that's a commitment question. You can't ask that question."

Citing our opinion in *Standefer v. State*,[2] the Court of Appeals upheld the trial judge's ruling. "This question, although open-ended, is a commitment question because it 'asks the prospective juror[s] to set hypothetical parameters' for their decision-making."[3]

## II. Analysis

A commitment question is a question that commits a prospective juror to resolve or to refrain from resolving an issue a certain way after learning of a particular fact.[4] Commitment questions are impermissible unless the law requires a commitment,[5] and the law does not require a commitment on what factors a juror will consider during sentencing.[6] However, a trial court abuses its discretion if it disallows a proper voir dire question.[7]

The Court of Appeals's holding directly contradicts the decision of the Tenth Court of Appeals in *Vrba v. State*.[8] In *Vrba*, the Tenth Court held that the questions "Why do you think

---

[2] 59. S.W.3d 177, 180 (Tex. Cr. App. 2001).

[3] *Davis*, 315 S.W.3d at 913.

[4] *Lydia v. State*, 109 S.W.3d 495, 498 (Tex. Cr. App. 2003).

[5] *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Cr. App. 2005).

[6] *Sells v. State*, 121 S.W.3d 748, 757-58, (Tex. Cr. App. 2003); *Standefer*, 59 S.W.3d at 181-82.

[7] *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Cr. App. 2002).

[8] 151 S.W.3d 676 (Tex. App.–Waco 2004, pet. ref'd).

someone should be punished?" and "[W]hich one of these [four theories of punishment] is most important to you in trying to determine how someone should be punished and how much punishment they should receive?" were not commitment questions.[9] Citing a footnote in our opinion in *Sells v. State*,[10] the Tenth Court concluded that these questions inquired into "the jurors' general philosophical outlook on the justice system," and that parties "are given broader latitude to ask questions of this sort."[11]

*Sells* was a capital-murder appeal. Sells's counsel attempted to ask venire members how parole law would influence their sentencing decisions,[12] but the trial court refused to allow the questions. We determined that these questions "relate to how a particular fact (in this case, the minimum amount of time a capital life defendant must be incarcerated before becoming eligible for parole) might influence jury deliberations,"[13] and were thus commitment questions. We then noted:

> These are not questions, for example, that inquire ... into a prospective juror's general philosophical outlook on the justice system (such as whether the retribution, deterrence, or rehabilitation is the prime goal of the criminal justice system). The parties are given broader latitude to ask such general background and philosophy questions.[14]

---

[9] *Id*., at 679.

[10] 121 S.W.3d 748 (Tex. Cr. App. 2003).

[11] *Vrba*, 151 S.W.3d at 679 (internal quotations omitted).

[12] *Sells*, 121 S.W.3d, at 755 (Appellant's counsel sought to ask questions such as "Would the minimum length of time a defendant could serve in prison before he could be paroled be something you would want to know in answering the special issues?"and "Would you be more likely, or less likely, generally, to view a defendant as a continuing threat to society if you knew he could not be paroled for a minimum of 40 years?")

[13] *Id*., at 756.

[14] *Id*., at 756 n.22.

While this note in *Sells* was not part of our holding in that case, it is an accurate statement of the law, and the distinction it draws can be seen in this case. The appellant's counsel asked "what factors ... are important" in sentencing. This did not ask the jurors how particular facts would influence their deliberations. This was an inquiry into the jurors' general philosophies.

In its opinion, the Court of Appeals compared the appellant's question to a question given as an example in *Standefer*: "What circumstances in your opinion warrant the imposition of the death penalty?" But the example from *Standefer* is distinguishable. The *Standefer* example asked jurors to define situations in which they would impose a specific sentence. Had this appellant's counsel asked jurors what circumstances would warrant the maximum punishment for aggravated robbery with a deadly weapon, that would have been an impermissible commitment question. Instead, the appellant's question sought to discover which factors would be important to jurors' decisions, without inquiring how those factors would influence the decision.

The question in this case is also distinguishable from the death-penalty question because sentencing for a capital felony has only two possible outcomes, life in prison without parole or the death penalty.[15] Jurors must answer specific questions either yes or no.[16] In this case, the range of possible sentences included probation, possible terms of confinement ranging from five to ninety-nine years, or life, and a possible fine of up to $10,000. Where jurors will be required to choose between only two possibilities, inquiries into what will influence their decision are more likely to require commitments than in situations where jurors can choose among a broader range of options.

---

[15] *See* TEX. PENAL CODE § 12.31.

[16] *See* TEX. CODE CRIM. PROC. art. 37.071.

Having found that the Court of Appeals erred in determining that the appellant's question was a commitment question, we remand this cause to that Court for further proceedings.

Delivered: March 30, 2011.
Publish.