**Affirmed and Memorandum Opinion filed October 21, 2014.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-13-00416-CR

### CLAIR A. WOLF, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1354683**

## M E M O R A N D U M   O P I N I O N

A jury convicted Clair A. Wolf of solicitation of capital murder[1] and assessed his punishment at life confinement and a $10,000 fine. Appellant challenges his conviction on grounds that the trial court erred by (1) admitting into evidence the opinion testimony of Emily Travathan at the guilt-innocence phase of trial; and (2) sustaining the State's objections during appellant's cross-examination

---

[1] *See* Tex. Penal Code Ann. § 15.03(a), d(1) (Vernon 2011) (criminal solicitation); Tex. Penal Code Ann. § 19.03(a)(3) (Vernon Supp. 2014) (capital murder).

of Nancy Ijames at the punishment phase of trial. We affirm.

## BACKGROUND

This criminal prosecution arises from a longstanding family feud among siblings over their mother's estate. Appellant is the brother of Vennie Wolf and Elizabeth Wolf. Vennie and Elizabeth Wolf were appointed co-executors of their mother's estate after their mother died in June 2007. Appellant did not qualify as an executor and was not appointed.

Vennie Wolf testified that appellant frustrated his sisters' attempts to settle the estate as the siblings fought multiple legal battles during three years of bitter litigation. They conducted four failed mediations but reached a settlement at a fifth mediation held on June 14, 2010. Appellant agreed to relinquish his claim to the estate in exchange for cash and three pieces of real property. The feud nevertheless continued after settlement; the cash never was distributed to appellant because he did not fulfill his settlement obligations.

Appellant dated Emily Travathan from 2006 to 2008. She testified that appellant told her on two or three occasions that the happiest day of his life would be the day his sisters died. Travathan testified over appellant's objection that she believed appellant was angry enough to hurt his sisters.

Appellant was jailed in March 2012 on unrelated charges; at that time, he met William Maceachran and they became friends. According to Maceachran, appellant was angry at his sisters and told Maceachran that he wanted his sisters killed. From late March 2012 until mid-April 2012, Maceachran and appellant discussed the murders of Vennie Wolf, her husband Brock Moore, and Elizabeth Wolf. Appellant and Maceachran agreed that appellant would give Maceachran a place where he and his daughter could live rent free for life if Maceachran

2

committed the murders for appellant.

Maceachran testified that he contacted the Harris County District Attorney's office regarding appellant's solicitation of murder. With Maceachran's help, the District Attorney's office recorded a conversation between appellant and Maceachran in jail. The State played the recorded conversation at trial. In the recording, appellant states that the "walls got ears." He nevertheless answers Maceachran's questions regarding his motives for killing his sisters and the murder plan. Maceachran asks, "[I]f you kill 'em what's the point?" Appellant answers, "The point is, I get the estate back." Maceachran states, "Ok, I got to thinking about what you were saying, about uh, making this look like a bad dope deal, on uh, Brock and his old lady. Do you think that's the best way? I mean, which — what do you think?" Appellant answers, "Anyway that looks like it's not conspicuous. You follow me?"

The jury convicted appellant of solicitation of capital murder following the guilt-innocence phase of trial. At the trial's punishment phase, the jury heard testimony from which the State attempted to link appellant to a prior murder attempt on Vennie Wolf's life. Vennie Wolf testified that she received a package at her home on June 18, 2010, four days after appellant relinquished his claim to his mother's estate. She testified that the package exploded when she opened it, causing her permanent disfigurement and loss of the use of two fingers. Vennie Wolf also testified that appellant was convicted of cruelty to animals in 2007.

Another of appellant's former girlfriends, Nancy Ijames, testified that she began dating appellant in 2006. She stated that appellant left a cardboard box in the closet of her home. Ijames's neighbor, Lee Musclewhite, testified that he removed the cardboard box from Ijames's home. He feared that the box contained a bomb and contacted law enforcement.

3

Bomb technician David Bock, who is employed by the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), testified that he investigated the bomb that injured Vennie Wolf. Bock testified that he responded to Musclewhite's call regarding the cardboard box. He stated that the cardboard box contained a live bomb, which he disabled. Bock stated that he compared the remnants of the bomb that injured Vennie Wolf with the bomb that he removed from the cardboard box. He explained that the bombs shared many design characteristics, which suggested that the same individual built both bombs.

ATF technician Amy Michaude also testified. She stated that she compared trace evidence from the remnants of the bomb that injured Vennie Wolf with trace evidence from the bomb that Bock removed from the cardboard box. She stated that trace evidence from the two bombs matched.

ATF firearm and tool mark examiner Ron Nichols testified that he also examined the remnants of the bomb that injured Vennie Wolf and the bomb that Bock removed from the cardboard box. Nichols stated that he believed the same tools were used to make each bomb.

Appellant called one witness at the punishment phase of trial. His witness, Nettie Wilson, testified that she lived with appellant from 2000 until 2010. Wilson stated that appellant did not keep gunpowder at their home and he never told her he was going to kill his sisters. On cross-examination, Wilson testified that she and appellant committed fraud on the federal government by cashing appellant's unemployment checks while he was in jail.

The jury assessed appellant's punishment at life confinement and a $10,000 fine. This punishment is at the upper end of the range of available punishments that appellant could have received. *See* Tex. Penal Code Ann. § 12.32 (Vernon 2011) (an individual adjudged guilty of a first-degree felony shall be punished by

4

imprisonment for life or for any term of not more than 99 years or less than five years, and may be punished by a fine not to exceed $10,000).

Appellant contends in two issues that the trial court erred by (1) allowing Travathan to give improper opinion testimony regarding his guilt at the guilt-innocence phase of trial; and (2) limiting cross-examination of Ijames at the punishment phase of trial. We consider the issues in turn.

## I.     The Trial Court Did Not Err by Admitting Travathan's Testimony

Appellant contends that the trial court erred by permitting Travathan to opine in front of the jury that appellant was angry enough to hurt his sisters. He argues that Travathan's testimony was an improper opinion of appellant's guilt. The State argues that Travathan's testimony was admissible under Texas Rule of Evidence 701.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion; we will not reverse the decision if it is within the zone of reasonable disagreement. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Additionally, we disregard a trial court's non-constitutional error in admitting or excluding evidence unless the error affects an appellant's substantial rights. *See* Tex. R. Evid. 103; Tex. R. App. P. 44.2(b); *Walters v. State*, 247 S.W.3d 204, 218-19 (Tex. Crim. App. 2007). "Substantial rights are affected when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Walters*, 247 S.W.3d at 218 (internal quotation marks omitted). "[S]ubstantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d

5

356, 365 (Tex. Crim. App. 2001) (internal quotation marks omitted).

Texas Rule of Evidence 701 permits a lay witness to offer opinion testimony if the opinion is (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact issue in the case. *See Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex. Crim. App. 2004). If a witness's lack of personal knowledge yields testimony that amounts to "choosing up sides" or an opinion of guilt or innocence, the opinion should be excluded. *See Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997); *see also DeLeon v. State*, 322 S.W.3d 375, 383 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("No witness is competent to voice an opinion as to guilt or innocence."). However, if the opinion is otherwise admissible, the testimony is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Tex. R. Evid. 704; *see Ex parte Nailor*, 149 S.W.3d at 134.

An opinion satisfies Rule 701's personal knowledge requirement "if it is an interpretation of the witness's objective perception of events (i.e. his own senses or experience)." *Fairow*, 943 S.W.2d at 899. A witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from the witness's own experiences or observations. *Osbourn v. State*, 92 S.W.2d 531, 535 (Tex. Crim. App. 2002). Therefore, once the witness establishes personal knowledge of the facts underlying his or her opinion, the witness has satisfied Rule 701's personal knowledge requirement. *Fairow*, 943 S.W.2d at 899.

Travathan testified that she dated appellant from 2006 to 2008. She stated that appellant always talked about his mother's estate, and that she had conversations with appellant about his sisters and the estate. She testified that appellant repeatedly told her the happiest day of his life would be the day his sisters died. Travathan stated that appellant became increasingly bitter and

6

obsessed with his mother's estate as time passed. The State asked Travathan, "After hearing him and listening to him, did you think that he was mad enough" to hurt his sisters. Travathan answered, "Yes, sir."

We conclude that the trial court acted within its discretion in allowing Travathan to testify regarding her opinion that appellant was mad enough to hurt his sisters. Travathan's testimony established her personal knowledge of facts from which she could conclude that appellant harbored significant anger towards his sisters. The trial court could have found Travathan's opinion rationally based on her personal observations of appellant's actions and statements; therefore, it acted within its discretion by admitting this testimony. *See* Tex. R. Evid. 701; *Fairow*, 943 S.W.2d at 899 ("[O]nce the proponent of the opinion establishes personal knowledge of the facts underlying the opinion, he has satisfied the perception requirement of Rule 701. This is so even if the opinion concerns culpable mental state."); *King v. State*, 953 S.W.2d 266, 270 (Tex. Crim. App. 1997) (lay witness's testimony that she "believed that [the accused] possibly killed" the victim was not an impermissible opinion of guilt because the witness elaborated on observations she made the night preceding the murder, culminating in her never seeing the victim alive again). We overrule appellant's first issue.

## II. The Trial Court's Restriction of Appellant's Cross-examination of Ijames Did Not Affect Appellant's Substantial Rights

Appellant next contends that the trial court erred in sustaining the State's objections during his cross-examination of Ijames at the punishment phase of trial. Appellant argues that he was denied the opportunity to establish Ijames's bias in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution and Texas Rule of Evidence 613(b). The State argues that the trial court exercised appropriate discretion in limiting the scope of cross-examination.

7

### A.    Preservation

As an initial matter, we determine that appellant did not preserve a Confrontation Clause complaint for appeal.    Therefore, we consider only appellant's non-constitutional argument under Rule 613(b).

To preserve error in the exclusion of evidence, the proponent must object, obtain a ruling from the trial court (or object to the trial court's refusal to rule), and make an offer of proof.  *See* Tex. R. Evid. 103(a)(1), (2); *Reyna v. State*, 168 S.W.3d 173, 176-77 (Tex. Crim. App. 2005); *see also* Tex. R. App. P. 33.1, 33.2. The proponent also must state the grounds for the desired ruling "with sufficient specificity to make the trial court aware of the complaint."   Tex. R. App. P. 33.1(a)(1)(A); *Reyna,* 168 S.W.3d at 177 ("The party complaining on appeal . . . must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question.") (quoting *Martinez v. State*, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002)).   When a single objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection preserves error only on non-constitutional evidentiary grounds.  *See Reyna*, 168 S.W.3d at 179 (Confrontation Clause error not preserved where counsel argued at trial only that excluded evidence on a witness's credibility was not hearsay); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (Confrontation Clause error not preserved where counsel objected to testimony at trial only on hearsay grounds).

The following exchange occurred during appellant's cross-examination of Ijames:

> APPELLANT'S COUNSEL:  [W]asn't there one time when you, I guess, got in a dispute with Mr. Wolf and tried to run him and a friend

over in your car?

THE STATE:  Object to this now.

IJAMES:  Now, wait a minute.  I don't remember.

THE COURT:  One moment until I make a ruling.  That's sustained.

APPELLANT'S COUNSEL:  May we approach, your Honor?

THE COURT:  Sure.

(At the bench)

APPELLANT'S COUNSEL:  To show bias — also able to show bias.

THE COURT:  It will be sustained.

As the exchange shows, appellant did not articulate a constitutional argument to preserve a Confrontation Clause complaint.  Appellant contended generally that his argument went to "bias."  His argument could have referred either to the Texas Rules of Evidence or the Confrontation Clause.  *See Reyna*, 168 S.W.3d at 179 (argument for proffering evidence attacking "credibility" could have referred either to the Texas Rules of Evidence or the Confrontation Clause).  Because appellant's argument implicated both the Texas Rules of Evidence and the Confrontation Clause, the argument was insufficient to preserve a Confrontation Clause complaint.  *See id.* at 179.

Appellant's argument preserved a contention that the excluded evidence should have been admitted under the Texas Rules of Evidence.  *See id.*; *Paredes*, 129 S.W.3d 530, 535.  We review a trial court's non-constitutional evidentiary rulings for abuse of discretion, and disregard those errors not affecting an appellant's substantial rights.  *See* Tex. R. Evid. 103; Tex. R. App. P. 44.2(b); *Tillman*, 354 S.W.3d at 435; *Walters*, 247 S.W.3d at 218-19.

9

## B.     Admissibility

Texas Rule of Evidence 613(b) addresses how a witness may be examined concerning bias or interest and when extrinsic evidence of that bias or interest may be admitted. *See Hammer v. State*, 296 S.W.3d 555, 567 (Tex. Crim. App. 2009). The rule presumes that a defendant has the right to impeach a State's witness. *See id.* Under Texas law, "[a] witness may be asked *any* question, the answer to which may have a tendency to affect his credibility." *Koehler v. State*, 679 S.W.2d 6, 10 (Tex. Crim. App. 1984) (emphasis in the original). "The possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him." *Billodeau v. State*, 277 S.W.3d 34, 42-43 (Tex. Crim. App. 2009).

At the punishment phase of trial, the State encouraged the jury to consider appellant's prior bad act of injuring Vennie Wolf with a bomb. Appellant was never charged in connection with the bombing; therefore, the State had the burden of proving that appellant committed the bombing beyond a reasonable doubt. *See* Tex. Crim. Proc. Code Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2014).

The State presented a number of witnesses in an effort to prove that appellant committed the bombing. Ijames testified that appellant left a cardboard box in her closet. She testified that she asked her neighbor, Musclewhite, to remove the box. Musclewhite testified that he removed the box and called law enforcement. ATF agent Bock testified that he responded to Musclewhite's call, removed the box from Musclewhite's possession, and uncovered a bomb within the box. Bock, Michaude, and Nichols testified that the remnants of the bomb that injured Vennie Wolf and the bomb Bock uncovered in the box shared many

10

characteristics.

Appellant contends that the trial court erred in limiting his cross-examination questioning of Ijames. Appellant asked Ijames, "[W]asn't there one time when you, I guess got in a dispute with Mr. Wolf and you tried to run him and a friend over in your car?" The State objected, but before the court ruled, Ijames answered, "Now, wait a minute. I don't remember." The trial court sustained the objection. Appellant made a bill of exception, in which the following exchange occurred:

> APPELLANT'S COUNSEL: Ms. Ijames, was there an occasion where you tried to run over Mr. Wolf and a friend of his in your car?
>
> IJAMES: If I did, I don't remember it.
>
> APPELLANT'S COUNSEL: Okay. You don't remember having an accident with him or whatever? You don't remember running into his car with — when y'all were having an argument?
>
> IJAMES: Honest to God, I don't remember it.
>
> APPELLANT'S COUNSEL: Okay. That's all we have.

Appellant argues that he should have been allowed to examine Ijames regarding this incident to show her bias against him. Appellant asserts that the trial court's error was significant because Ijames's testimony connected appellant to the bomb found within the cardboard box; in turn, the bomb in the box connected appellant to the bomb that injured Vennie Wolf.

The State contends that the trial court acted within its discretion in sustaining the State's objection. It argues that appellant never proved a nexus or logical connection to any potential motive for Ijames to testify against him because appellant never proved that Ijames tried to run over appellant in her car.

The parties' arguments highlight the balance between appropriate,

11

exploratory cross-examination and inappropriate, harassing cross-examination. Cross-examination is by nature exploratory. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Nevertheless, the examining party must show that the testimony is relevant. *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004). The party does this by "demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party." *Id.*

Appellant asked Ijames a question regarding this incident; the State objected without stating its grounds; and the trial court sustained the objection without stating its reasons. Appellant indicated a desire to explore an incident, which may be relevant to bias and which the State never suggested was speculative. *See Holmes v. State*, 323 S.W.3d 163, 170 (Tex. Crim. App. 2009) ("[W]here the defendant, in cross-examining a State's witness, desires to elicit subject matters that tend to impeach the witness's character for truthfulness — for example, to show malice, ill-feeling, ill-will, bias, prejudice, or animus on the part of the witness toward the defendant — in order to preserve the issue for appellate review, he is not required to show that his cross-examination would have affirmatively established the facts sought, but merely that he desired to examine the witness with regard to those specific subject matters that tend to impeach the witness during his cross-examination.").

Ijames twice stated that she did not remember that the event occurred, and, thereafter, appellant did not introduce any extrinsic evidence suggesting that the event occurred. This record provides reason to question whether appellant could have produced any evidence that the event occurred, and whether he was pursuing a speculative and harassing inquiry. If appellant was pursuing a purely speculative and harassing inquiry, then the trial court properly exercised discretion in

12

sustaining the State's objection to appellant's cross-examination question. *See Carroll*, 916 S.W.2d at 498 ("[A] trial judge may limit cross-examination when a subject is exhausted, or when the cross-examination is designed to annoy, harass, or humiliate, or when the cross-examination might endanger the personal safety of the witness.").

In any event, we determine that any asserted error did not affect appellant's substantial rights. We assess whether an evidentiary error affected a defendant's substantial rights at the punishment phase by asking whether the defendant received a longer sentence as a result of the error. *See Davis v. State*, 315 S.W.3d 908, 918-19 (Tex. App.—Houston [14th Dist.] 2010) *rev'd on other grounds*, 349 S.W.3d 517 (Tex. Crim. App. 2011); *Ivey v. State,* 250 S.W.3d 121, 126 (Tex. App.—Austin 2007), *aff'd*, 277 S.W.3d 43 (Tex. Crim. App. 2009)). We consider everything in the record, including other evidence admitted in the case, the nature of the evidence supporting the jury's determination, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We also may consider the State's and appellant's theories for assessing punishment. *Id.*

We conclude that the trial court's alleged error in sustaining an objection to cross-examination of Ijames did not affect appellant's substantial rights because the alleged error did not influence the jury or had but a slight effect; therefore, it did not result in appellant receiving a longer sentence. *See id.*; *Davis*, 315 S.W.3d at 918-19.

The State argued at closing that the jury should consider evidence adduced at the guilt-innocence phase of trial and assess a heavy punishment based on that evidence. *See Rayme v. State*, 178 S.W.3d 21, 27 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("It is clear that in assessing punishment the jury may consider all

13

of the evidence adduced at trial on guilt or innocence.") (citing *Duffy v. State*, 567 S.W.2d 197, 208) (Tex. Crim. App. 1978)).  The evidence adduced at the guilt-innocence phase of trial included testimony that appellant wished his sisters dead; it also included the recording between Maceachran and appellant, in which the two confirm their murder plan.  The task of setting a punishment within the statutory range is a "normative" judgment.  *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006).  The sentencer's discretion is "essentially unfettered."  *Id.* (internal quotation marks omitted).  The full punishment allowed by law already was in play on the basis of extensive evidence adduced at the guilt-innocence phase of the trial.  *See id.*  This circumstance cuts against a contention that additional cross-examination to elicit bias as to Ijames would have affected the jury, and consequently, appellant's punishment.  *See Ex parte Chavez*, 213 S.W.3d at 323; *Montilla*, 78 S.W.3d at 355.

Musclewhite testified that he removed a box from the closet of appellant's girlfriend, and Bock testified that he received the box from Musclewhite and found a bomb within the box.  Bock, Michaude, and Nichols examined the bomb. Ijames's animus, if shown, would not have suggested that the bomb was found anywhere other than Ijames's closet.  Appellant did not contest Ijames's testimony that he had a relationship with Ijames.  We determine that Ijames's animus, if proved, would not have provided much, if any, additional evidence for the jury to infer that Ijames lied about appellant leaving the box in her closet.  *cf. Linney v. State*, 401 S.W.3d 764, 777 (Tex. App.—Houston [14th Dist.] 2013) pet. ref'd) (constitutional error in limiting cross-examination was harmless where the proposed line of questioning would not have suggested that a sexual assault victim inflicted self-harm for any other reason than in response to the sexual assault). Therefore, even if the jury relied on Ijames's testimony to connect appellant to the

14

bombing, and if it considered the bombing in assessing punishment, we have fair assurance that they would have done the same regardless of whether Ijames held animus towards appellant. *See Montilla*, 78 S.W.3d at 355.

After examining the record as a whole, we have fair assurance that the trial court's decision to limit Ijames's cross-examination did not influence the jury or had but a slight effect on its assessment of punishment. *See id.* Therefore, we hold that the trial court's decision, if error, did not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Montilla*, 78 S.W.3d at 355. Accordingly, we overrule appellant's issue.

## CONCLUSION

Having overruled appellant's two issues, we affirm the trial court's judgment.


/s/  William J. Boyce
    Justice



Panel consists of Justices Boyce, Jamison, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).