**Affirmed and Memorandum Opinion filed May 15, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00097-CR
_____

**JESSIE CURTIS PACKARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 300th Judicial District Court
Brazoria County, Texas
Trial Court Cause No. 60,914**

## MEMORANDUM OPINION

The only issue presented in this case is whether appellant was denied the effective assistance of counsel. We conclude that he was not.

Appellant Jessie Curtis Packard was charged with assaulting the complainant, his ex-wife. At the time of the offense, they were divorced but living together on a temporary basis. Their living arrangement was apparently designed to compensate for appellant's

child support arrearage. In exchange for staying at the complainant's apartment, appellant agreed to pay for the complainant's utilities.

Tensions mounted soon after appellant moved in, as arguments erupted over appellant's unwillingness to work. One morning in July 2009, the complainant observed that appellant had made their bed and sarcastically declared that he had no obligation to do so. Irritated by the comment, appellant proclaimed the bed his own and said that he would be taking it with him. When the complainant stretched herself on top of the bed in protest, appellant grabbed her by the leg and threw her against the dresser. Appellant then flipped over the mattress and propped it against the door. With the room barricaded so no one could enter, appellant grabbed the complainant's hand and hit it with a hammer. The physical attacks continued with punches to her head, face, shoulder, and back. Appellant also took a jar of coins and hurled pennies at her face. The assault ended when police were called to the scene and appellant was arrested.

Appellant was charged by indictment with assault on a family member, a charge enhanced to a third-degree felony because of a prior conviction for the same offense. The State offered a plea deal of five years' imprisonment. Appellant declined the offer, pleaded guilty, and sought probation instead.

At the punishment hearing, the jury heard evidence that appellant had committed another assault while out on bond. The complainant testified that she allowed appellant to stay at her home once more in July 2010. At the time, appellant had been laid off from work, and the complainant wanted someone to watch the children while she was away at a conference. When she returned, appellant discovered that she had been dating another man. The realization caused him to spiral into another fit of rage. He tore apart a wallet, some shoes, and clothes. He threw a cosmetics bag at the fireplace, attempting to break it. He also picked up the complainant, slammed her down on top of a chair, and then proceeded to punch her repeatedly. The complainant reported the incident after escaping with the help of her stepson.

The complainant also testified that appellant had been convicted of an earlier assault from October 2007. The two were married at that time and living in a motel with their three children. The complainant had an opportunity to earn extra pay at her job by working longer hours. Her time away angered appellant because he wanted her at home with him. Appellant also wanted her to spend what little money they had on cigarettes. An argument ensued after she opted to purchase gas and clothing for the children. Appellant hit her with his fists and threw a cell phone at her face, breaking her nose.

The complainant finally testified about prior incidents of domestic abuse dating back to 2004 or 2005, earlier in their marriage. These included events in which appellant hit her in front of the children; smashed an egg sandwich in her face; punched her in the head as she was throwing up in the bathroom; broke the cartilage in her ear; used keys to lacerate the skin on her forehead; cut off circulation in her wrists; pinched and twisted her breasts; threw knives, metal tools, and shoes at her; dragged her by her hair and feet; pushed her down; burned her with a cigarette; threw her to the ground when she was pregnant; gave her a concussion; and slapped her repeatedly. Appellant was not charged or convicted in connection with any of these attacks.

The jury assessed punishment at ten years' imprisonment, the maximum sentence prescribed by statute. In a single issue, appellant complains that counsel was ineffective because he allowed testimony of these unadjudicated offenses to be elicited at trial, despite the State's deficient notice of these offenses under article 37.07, section 3(g) of the Texas Code of Criminal Procedure.

We examine claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, appellant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. This deficiency will deprive appellant of a fair trial only when counsel's performance prejudices appellant's

3

defense. *Id.* at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Moreover, "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial

were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Appellant argues that counsel's performance was constitutionally deficient because counsel failed to object to evidence that he claims was inadmissible under article 37.07, section 3(g) of the Texas Code of Criminal Procedure.

Evidence deemed relevant to sentencing is admissible during the punishment stage of trial, including evidence of unadjudicated crimes and bad acts. Tex. Code Crim. Proc. art. 37.07, § 3(a)(1) (West 2012). If the defendant so requests, the State must provide reasonable notice of its intent to introduce such evidence. *Id.* art. 37.07, § 3(g). Notice is reasonable "only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." *Id.*

Pursuant to this rule, appellant requested that the State disclose its intent to introduce evidence of other crimes and past wrongs. The State's response proceeded as follows:

> Over the past twenty years, (1990 through 2010) in Brazoria County, Texas, the Defendant did commit numerous crimes, (literally hundreds), of the offense of Assault – Family Violence in Alvin, Texas against [the complainant] including, but not limited to, the following:
>
> > throwing a hot pan and fried egg in her face;
> > punching her in the ear and breaking the cartilage;
> > punching her about the head and body with the hand numerous times;
> > cutting her forehead with keys;
> > holding her arms until the blood circulation was stopped;
> > hitting and pinching her breasts;
> > throwing tools and hitting her with them about the head and body;
> > throwing shoes and/or clogs and hitting her with them about the head and body;
> > throwing various other objects and hitting her with them about the

5

head and body;
hitting her with various objects about the head and body;
physically dragging her around by the hair;
picking her up and throwing her onto the ground and into other objects/furniture;
burning her with a cigarette.

Appellant contends that notice was unreasonable because the State did not provide a specific date on which any of these acts occurred. Language asserting that such acts occurred "[o]ver the past twenty years," appellant argues, is too vague, general, and insufficient to provide him with any information on which to prepare a proper defense. According to appellant, no reasonable trial strategy would have allowed the introduction of so many objectionable offenses.

Courts have afforded the State some latitude when identifying the date on which a prior act occurred. Generally, this flexibility will extend to notices in which a prior act is alleged to have occurred within a span of months. *See, e.g.*, *Burling v. State*, 83 S.W.3d 199, 202–03 (Tex. App.—Fort Worth 2002, pet. ref'd) (six weeks); *Splawn v. State*, 949 S.W.2d 867, 870–71 (Tex. App.—Dallas 1997, no pet.) (eighteen months); *Hohn v. State*, 951 S.W.2d 535, 537 (Tex. App.—Beaumont 1997, pet. ref'd) (three and a half months). Notice implying a span of several years, however, will likely be held too general to satisfy this relaxed standard. *See, e.g.*, *Roethel v. State*, 80 S.W.3d 276, 280 (Tex. App.—Austin 2002, no pet.) (concluding that eight-year span was unreasonable).

In this case, the State alleged an array of unadjudicated offenses committed over a span of twenty years. No specific date was assigned to any of the individual allegations. Assuming for the sake of argument that this notice was unreasonable, any error in admitting the evidence would be subject to a harm analysis for nonconstitutional error. *Gonzalez v. State*, 337 S.W.3d 473, 485 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Under this standard, error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *King v.*

6

*State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error is harmless. *Id.*

Our harm analysis begins with the purpose of the statute or rule that has been thwarted by error. *Roethel*, 80 S.W.3d at 281. The purpose of Article 37.07, Section 3(g) is to avoid unfair surprise and to enable the defendant to prepare an answer to the State's evidence of unadjudicated offenses. *Davis v. State*, 315 S.W.3d 908, 916 (Tex. App.—Houston [14th Dist.] 2010), *rev'd on other grounds*, 349 S.W.3d 517 (Tex. Crim. App. 2011); *Apolinar v. State*, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005). With that focus in mind, we must examine the record to determine if the deficient notice resulted from prosecutorial bad faith, or if it somehow prevented the defendant from preparing for trial. *Apolinar*, 106 S.W.3d at 414. Under this latter inquiry, we ask whether the defendant was surprised by the substance of the evidence or whether the lack of notice affected his ability to prepare cross-examination or mitigating evidence. *Id.*

We find no indication that the State acted in bad faith in its failure to provide reasonable notice. The notice describes the offenses alleged, and it names the victim and county in which they occurred.[1] It also alleges that the abuse happened "literally hundreds" of times. Even if the date requirement were lacking, the record does not demonstrate that its generality was intended to hinder the preparation of appellant's defense.

Nor do we find any indication that the notice actually prevented appellant from mounting a proper defense. Appellant requested and received notice nearly two months in advance of trial. Counsel cross-examined every witness called by the State, and his questions addressed the subject of the unadjudicated offenses. Appellant also produced his own character witnesses, who testified that he was a changed man and deserving of

---

[1] The complainant testified that some of the offenses occurred in Harris County, including the incidents where appellant pushed her while pregnant and threw an egg in her face. The others happened in Brazoria County, or in both Brazoria County and Harris County. Appellant does not argue that he was unfairly surprised by this specific deficiency in the State's notice.

probation. Accordingly, the record does not suggest that appellant was unable to prepare for cross-examination or mitigating evidence.

Appellant argues that he was harmed, nonetheless, because the inadmissible evidence was the focus of nearly a third of the State's case-in-chief, and the prosecutor emphasized it repeatedly during closing argument. Appellant relies on *Jackson v. State*, a case that considered such factors when assessing whether the defendant suffered harm. 314 S.W.3d 118, 135 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Given the substantial amount of time at trial focused on these inadmissible offenses and the State's extended argument concerning the victims of those offenses, we cannot say that the error did not have a substantial effect and influence on the jury's determination of guilt and punishment."). *Jackson* is distinguishable, however, because it did not assess harm in light of any unfair surprise suffered by the defendant as a result of deficient notice. *See id.* at 127–30 (admission of evidence of previous offenses during guilt phase of trial was "of little or no probative value" where it was undisputed that defendant was not a participant in those offenses, and admission of semi-automatic handgun was not relevant where handgun was recovered more than a year before charged offense and where charged offense involved use of a revolver).

Importantly, appellant did not argue at trial, nor does he argue on appeal, that he was unfairly surprised or ambushed by the evidence elicited from the State. In such circumstances, we cannot determine that any error in admitting evidence in violation of a notice requirement had an injurious effect on the jury's verdict. *Cf. Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005) (holding that evidence admitted in violation of notice requirement under Rule of Evidence 404(b) not harmful error if defendant was not surprised by the evidence). Because any error was likely harmless, appellant has not carried his burden of demonstrating that he suffered prejudice from counsel's failure to object. *See Apolinar*, 106 S.W.3d at 415; *Roethel*, 80 S.W.3d at 283.

We would finally observe that appellant has not overcome the presumption that counsel's actions were the result of sound trial strategy. Before being condemned as unprofessional or incompetent, counsel is normally afforded an opportunity to explain his actions, such as with a hearing on a motion for new trial or with the filing of an affidavit. *See Bone*, 77 S.W.3d at 836; *Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Appellant did not file a motion for new trial, and the record is likewise devoid of any explanation regarding counsel's reasons for not objecting. It is conceivable that counsel investigated these unadjudicated offenses himself, learned the dates of their occurrences before trial, and elected not to obstruct their admission. *See Henderson v. State*, 704 S.W.2d 536, 538 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) ("Not objecting can be a trial strategy."). The record is silent, however, providing no indication as to counsel's knowledge on this matter, or lack thereof.

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Because the record here is underdeveloped, we must presume that counsel's failure to object was motivated by sound trial strategy. *See Strickland*, 466 U.S. at 689 (observing that a fair assessment of attorney performance must be made without the distorting effects of hindsight).

Appellant's sole issue is overruled, and the judgment of the trial court is affirmed.


/s/      Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).

9