**Christopher Connley DAVIS, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1400–10.**

Court of Criminal Appeals of Texas.

March 30, 2011.

Joseph W. Varela, Houston, for Appellant.

Michelle R. Townsend, Asst. D.A., Houston, Lisa C. McMinn, State's Attorney, Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which, MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The appellant was convicted of aggravated robbery, and a jury sentenced him to ten years' confinement. The Fourteenth Court of Appeals affirmed.[1] The appellant petitioned for review from this Court, contending that the Court of Appeals erred in holding that his voir dire question was an improper commitment question. We shall reverse and remand to the Court of Appeals for further consideration.

### I. Background

During voir dire, defense counsel asked the jury panel, "Let's talk about factors in [assessing] the sentence in a case of aggravated robbery with a deadly weapon, what factors do y'all think are important?" Without an objection from the State, the trial court interjected, "[Counsel], that's a commitment question. You can't ask that question."

Citing our opinion in *Standefer v. State*,[2] the Court of Appeals upheld the trial

---

1. *Davis v. State,* 315 S.W.3d 908 (Tex.App.-Houston [14th Dist.] 2010).

2. 59 S.W.3d 177, 180 (Tex.Cr.App.2001).

judge's ruling. "This question, although open-ended, is a commitment question because it 'asks the prospective juror[s] to set hypothetical parameters' for their decision-making." [3]

## II. Analysis

A commitment question is a question that commits a prospective juror to resolve *or to refrain from resolving* an issue a certain way after learning of a particular fact.[4] Commitment questions are impermissible unless the law requires a commitment,[5] and the law does not require a commitment on what factors a juror will consider during sentencing.[6] However, a trial court abuses its discretion if it disallows a proper voir dire question.[7]

The Court of Appeals's holding directly contradicts the decision of the Tenth Court of Appeals in *Vrba v. State*.[8] In *Vrba*, the Tenth Court held that the questions "Why do you think someone should be punished?" and "[W]hich one of these [four theories of punishment] is most important to you in trying to determine how someone should be punished and how much punishment they should receive?" were not commitment questions.[9] Citing a footnote in our opinion in *Sells v. State*,[10] the Tenth

Court concluded that these questions inquired into "the jurors' general philosophical outlook on the justice system," and that parties "are given broader latitude to ask questions of this sort." [11]

*Sells* was a capital-murder appeal. Sells's counsel attempted to ask venire members how parole law would influence their sentencing decisions,[12] but the trial court refused to allow the questions. We determined that these questions "relate to how a particular fact (in this case, the minimum amount of time a capital life defendant must be incarcerated before becoming eligible for parole) might influence jury deliberations," [13] and were thus commitment questions. We then noted:

> These are not questions, for example, that inquire … into a prospective juror's general philosophical outlook on the justice system (such as whether the retribution, deterrence, or rehabilitation is the prime goal of the criminal justice system). The parties are given broader latitude to ask such general background and philosophy questions.[14]

While this note in *Sells* was not part of our holding in that case, it is an accurate statement of the law, and the distinction it

---

3. *Davis*, 315 S.W.3d at 913.

4. *Lydia v. State*, 109 S.W.3d 495, 498 (Tex.Cr. App.2003).

5. *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Cr.App.2005).

6. *Sells v. State*, 121 S.W.3d 748, 757–58 (Tex. Cr.App.2003); *Standefer*, 59 S.W.3d at 181–82.

7. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Cr. App.2002).

8. 151 S.W.3d 676 (Tex.App.-Waco 2004, pet. ref'd).

9. *Id.*, at 679.

10. 121 S.W.3d 748 (Tex.Cr.App.2003).

11. *Vrba*, 151 S.W.3d at 679 (internal quotations omitted).

12. *Sells*, 121 S.W.3d, at 755 (Appellant's counsel sought to ask questions such as "Would the minimum length of time a defendant could serve in prison before he could be paroled be something you would want to know in answering the special issues?" and "Would you be more likely, or less likely, generally, to view a defendant as a continuing threat to society if you knew he could not be paroled for a minimum of 40 years?")

13. *Id.*, at 756.

14. *Id.*, at 756 n. 22.

draws can be seen in this case. The appellant's counsel asked "what factors . . . are important" in sentencing. This did not ask the jurors how particular facts would influence their deliberations. This was an inquiry into the jurors' general philosophies.

In its opinion, the Court of Appeals compared the appellant's question to a question given as an example in *Standefer*: "What circumstances in your opinion warrant the imposition of the death penalty?" But the example from *Standefer* is distinguishable. The *Standefer* example asked jurors to define situations in which they would impose a specific sentence. Had this appellant's counsel asked jurors what circumstances would warrant the maximum punishment for aggravated robbery with a deadly weapon, that would have been an impermissible commitment question. Instead, the appellant's question sought to discover which factors would be important to jurors' decisions, without inquiring how those factors would influence the decision.

The question in this case is also distinguishable from the death-penalty question because sentencing for a capital felony has only two possible outcomes, life in prison without parole or the death penalty.[15] Jurors must answer specific questions either yes or no.[16] In this case, the range of possible sentences included probation, possible terms of confinement ranging from five to ninety-nine years, or life, and a possible fine of up to $10,000. Where jurors will be required to choose between only two possibilities, inquiries into what will influence their decision are more likely to require commitments than in situations where jurors can choose among a broader range of options.

Having found that the Court of Appeals erred in determining that the appellant's question was a commitment question, we remand this cause to that Court for further proceedings.

KELLER, P.J., filed a dissenting opinion.

KELLER, P.J., dissenting.

Defense counsel attempted to ask the prospective jurors what "factors" they considered to be important in assessing the sentence "in a case of aggravated robbery with a deadly weapon." Like the question in *Barajas v. State*,[1] regarding the ability of a prospective juror to be "fair and impartial" under particular circumstances, the question in this case is ambiguous and subject to being interpreted as an improper commitment question. Because of this ambiguity, I would hold that the trial court did not abuse its discretion in excluding the question.

We have upheld the refusal by trial courts to allow counsel to ask ambiguously worded questions that could be interpreted as eliciting an improper commitment. In *Barajas*, defense counsel attempted to ask whether prospective jurors could be "fair and impartial" in a case in which the victim was nine years old.[2] We explained that this question could be interpreted as an inquiry about the effect of the victim's age on three different matters: (1) guilt, (2) witness credibility, or (3) punishment.[3] Inquiry into the third matter would constitute an attempt to obtain an impermissible commitment.[4] In *Sells v. State*, defense

15. *See* TEX. PENAL CODE § 12.31.

16. *See* TEX.CODE CRIM. PROC art. 37.071.

1. 93 S.W.3d 36 (Tex.Crim.App.2002).

2. 93 S.W.3d at 37.

3. *Id.* at 39–40.

4. *Id.* at 40.

counsel attempted to ask, among other things, whether the prospective jurors "would want to know" the defendant's minimum parole eligibility.[5] We explained that the question was ambiguous, because it could be intended to determine whether the prospective juror would "foreclose honest consideration of the special issues" or "give ... mitigating or aggravating impact to the minimum parole eligibility requirement."[6] If given the latter interpretation, the question would call for an improper commitment.[7]

We explained in *Barajas* that "[t]he trial court may, within its discretion, require that parties phrase questions in a way that is precise enough to glean relevant information from the venire member's answer."[8] And in *Sells*, we said that a trial court may prohibit "attempts ... through ambiguously worded questions, to commit the veniremembers to giving mitigating or aggravating effect" to a particular fact.[9] We also held in *Sells* that a party could inquire into a prospective juror's "general philosophical outlook on the justice system (such as whether [ ] retribution, deterrence, or rehabilitation is the prime goal of the criminal justice system)."[10] But a party cannot ask even an open-ended question that seeks to set the parameters of a juror's decision-making, such as, "What circumstances in your opinion warrant the imposition of the death penalty?"[11] Nor can a party ask questions about whether a particular factor should be considered mitigating.[12]

The question in the present case does not explicitly ask the prospective jurors to say what types of evidence would be given mitigating or aggravating value in their punishment deliberations in the case at hand. But the question is not precise enough to limit the prospective jurors' answers to matters of general punishment philosophy. What are "factors," and what does it mean to say that they are "important?" The Court says that defense counsel's question "sought to discover which factors would be important to jurors' decisions, without inquiring how those factors would influence the decision."[13] This reasoning is similar to our conclusion in *Standefer* about the question in *Nunfio v. State*[14] on whether a prospective juror could be fair and impartial if the victim is a nun. There, we said "[a] juror could be 'fair' and still take into account the victim's status as a nun where that status is logically relevant to the issue at trial or fail to do so if the juror perceived that the victim's status as a nun should not be controlling."[15] Nevertheless, we later overruled *Nunfio* in *Barajas* on the basis that the question was ambiguous about what answers were to be elicited and constituted a "global fishing expedition" that the trial court was within its discretion to prohibit.[16]

5. *121 S.W.3d 748, 755 (Tex.Crim.App.2003).*

6. *Id.* at 756–57.

7. *Id.* at 757.

8. 93 S.W.3d at 39.

9. *121 S.W.3d at 756.*

10. *Id.* at 756 n. 22.

11. *See Standefer v. State*, 59 S.W.3d 177, 180 (Tex.Crim.App.2001) (quoting *Allridge v. State*, 850 S.W.2d 471, 480 (Tex.Crim.App. 1991)).

12. *Davis v. State*, 313 S.W.3d 317, 346 (Tex. Crim.App.2010).

13. Court's op. at 519.

14. 808 S.W.2d 482 (Tex.Crim.App.1991).

15. *Standefer*, 59 S.W.3d at 180.

16. *Barajas*, 93 S.W.3d at 39–42.

The question defense counsel sought to ask might have motivated the prospective jurors to discuss whether the goal of sentencing is to punish, rehabilitate, or deter criminal behavior, but the question might also have motivated them to discuss what types of evidence they consider to be aggravating or mitigating, such as age or criminal history. This danger is especially apparent where, as here, defense counsel sought to ask the prospective jurors about factors relevant to sentencing for the specific offense on trial. Under the circumstances, the trial court was at least within its discretion to prohibit the question as framed. If appellant really was seeking to elicit responses concerning the prospective jurors' general punishment philosophies, he could have framed a question that was precisely designed to achieve that purpose, and the trial court was within its discretion to require him to do so.