**AFFIRM as MODIFIED; and Opinion Filed July 31, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00422-CR

### NOLAN LAVON JOHNSON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F14-48249-M**

## MEMORANDUM OPINION
Before Justices Francis, Brown, and Schenck
Opinion by Justice Schenck

Nolan Lavon Johnson appeals his conviction for aggravated sexual assault of a child younger than 14 years old. In ten issues, Johnson challenges the trial court's decisions regarding his motion for new trial, admission of evidence, jury instructions, whether to compel the State to produce requested DNA testing documents, appellant's actual receipt of the indictment, and voir dire. We modify the trial court's judgment and affirm as modified. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant lived with Y.H., her mother, and four siblings. Y.H.'s mother noticed that appellant favored ten-year-old Y.H. over the other children, but she saw it as a beneficial relationship because Y.H. had little contact with her biological father who lived in Minnesota. However, Y.H.'s grandmother had concerns about appellant's relationship with Y.H. She

observed at Thanksgiving and Christmas that appellant secluded himself with Y.H. either in a bathroom or in a car parked outside. And, when Y.H. came to visit her grandmother for the summer, appellant called Y.H. over Skype "no less than five times daily" and as many as ten times in a day. Y.H.'s brothers told her that appellant would do all of Y.H.'s chores for her, but he would not do any other child's chores. Y.H.'s grandmother advised Y.H.'s mother to "watch more" because there were "too many little . . . things happening."

At the end of the summer, Y.H. returned home from her grandmother's house a week before school started. Y.H.'s mother was scheduled to work the entire week while appellant stayed at home with the children. On two consecutive days of that week, appellant sexually assaulted Y.H. Appellant told Y.H. not to tell anyone what had happened because she would get in trouble, her mother would get in trouble, and he would go to jail.

Appellant and Y.H.'s mother had been intimate on a regular basis all summer, but appellant stopped wanting to have sex with her after Y.H. returned home from her grandmother's. That same week, appellant asked Y.H.'s mother for pain medication because his penis hurt. Y.H.'s mother immediately noticed changes in Y.H.'s behavior, which convinced her to stay home the Friday of that week and to ask Y.H. in private whether anybody in general or appellant in particular was hurting her. Y.H.'s mother also examined Y.H.'s private area and found it to be red and swollen. After telling appellant they were going to the store, Y.H. and her mother went to a park where Y.H. told her appellant had assaulted her. Y.H.'s mother immediately called the police to report the assault.

Y.H. and her mother returned to their home, at which point Y.H.'s mother saw appellant walk out of the house, give both her and Y.H. "a really ugly look," and leave in a truck belonging to Y.H.'s mother. Appellant soon reappeared at the corner of the block where he

parked and got out of the truck to watch the police arrive and talk to Y.H.'s mother. When a second police car arrived, appellant fled on foot. The police eventually apprehended him.

The police set up an interview for Y.H. at the Dallas Children's Advocacy Center and observed the interview. Y.H. described the assault and appellant's threats that Y.H. and her mother would get into trouble if Y.H. told anyone what had happened. Additionally, the police took two items of Y.H.'s clothing and buccal swabs from Y.H. and appellant for forensic testing. A doctor examined Y.H. who complained "that her butt hurt."

A grand jury indicted appellant for aggravated sexual assault of a child younger than 14 years old by causing the sexual organ of Y.H. to contact appellant's mouth. Appellant pleaded not guilty, and a jury convicted him of the offense as alleged in the indictment. Appellant entered a plea of not true to an enhancement paragraph, which alleged a prior felony conviction for indecency with a child by exposure. The jury found the enhancement paragraph true and sentenced appellant to 28 years in prison. Appellant filed a motion for new trial, which was overruled by operation of law. He then filed this appeal.

DISCUSSION

## I.    Motion for New Trial

In his first issue, appellant contends the trial court abused its discretion by failing to conduct a hearing on his motion for new trial and by failing to grant a new trial. He argues that the motion for new trial indicated concerns about appellant's mental health and competency during trial that were not determinable from the record. The State responds that the trial court acted within its discretion by denying appellant's motion for new trial by operation of law without a hearing because appellant failed to present the motion to the trial court.

A defendant generally has a right to a hearing on a motion for new trial when the motion raises matters that cannot be determined from the record. *Bearnth v. State*, 361 S.W.3d 135, 145

(Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).  But a motion for new trial must first be "presented" to the trial court within ten days of its filing in order to preserve a complaint about the trial court's failure to conduct a hearing on the motion for new trial. *See* TEX. R. APP. P. 21.6; *Obella v. State*, No. PD-1032-16, 2017 WL 510568, at *1 (Tex. Crim. App. Feb. 8, 2017) (per curiam).  Simply filing the motion with the clerk will not suffice as notice.  *Stokes v. State*, 277 S.W.3d 20, 21–22 (Tex. Crim. App. 2009).  Rather, the defendant must give the trial court actual notice that he timely filed a motion for new trial and request a hearing.  *See Obella*, 2017 WL 510568, at *1.  To meet the presentment requirement, the record must show the movant actually delivered the motion for new trial to the trial court or otherwise brought the motion to the attention of the trial court.  *Stokes*, 277 S.W.3d at 21–22.

While appellant timely filed his motion for new trial, there is no record of any hearing until the motion was denied by operation of law.  The only suggestion of presentment in the record is the prayer in appellant's motion requesting that a hearing be conducted within ten days of the filing.  As the record does not indicate that appellant in fact communicated the request for a hearing in a timely manner to a person capable of acting on it, we overrule appellant's first issue. *See Bearnth*, 361 S.W.3d at 145.

## II.      Extraneous Offenses

### A.      *Notice of State's Intent to Introduce Extraneous Offenses*

In his second issue, appellant argues the trial court erred by overruling his contention that he received inadequate notice of the State's intent to introduce evidence of a prior conviction for assault as an extraneous offense during punishment.  He contends the trial court should have conducted an inquiry to verify that the State's notice was properly sent and delivered, and that the trial court should have afforded him a continuance to adequately respond to the extraneous offenses.

During the punishment phase of a trial, the State may introduce evidence of extraneous offenses committed by a defendant to the extent the court deems the evidence relevant to sentencing. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West 2016). If the defendant requests notice of the State's intent to use an extraneous offense during the punishment phase, the State must provide him notice in the same manner required by rule 404(b) of the Texas Rules of Evidence. *Id.* § 3(g). During the punishment phase of appellant's trial, the State sought to admit evidence of a prior Tarrant County conviction for assault. Appellant's counsel objected "under 37.07(3)(g), improper notice of extraneous offense" and now complains he did not receive notice of the State's intent to introduce evidence of this assault conviction.

Our review of the record reflects appellant requested, and the trial court granted, his request for "Punishment Notice 37.07" including evidence of extraneous offenses. Although not included in this record, the parties at trial referenced a pretrial hearing in April or May of 2015 during which the trial court ruled on a variety of defense motions. Our record also includes two documents filed in the trial court on May 29, 2015 entitled (1) "State's Notice of Motions Served to Defense Counsel" including "State's Notice of Extraneous Offenses" and (2) "Notice of Extraneous Offenses" specifically listing the Tarrant County misdemeanor assault conviction complained of on appeal. The certificate of service recites both documents were electronically served on the defense on May 29, 2015. On March 7, 2016, the day before testimony began, appellant, his trial counsel, and counsel for the State, all signed a document entitled "C.C.P. Article 39.14 Compliance Form" which lists evidence the State disclosed in this case and includes an entry stating, "Priors - Dkt # 1365411." This number corresponds with the docket number of the Tarrant County misdemeanor assault conviction. We conclude appellant received notice prior to trial of the State's intent to introduce evidence of the Tarrant County misdemeanor assault conviction. We overrule appellant's second issue.

### B.    Jury Instructions

In his third issue, appellant argues the jury instructions regarding extraneous offenses failed to conform with article 38.37 of the code of criminal procedure.

Article 38.37 provides "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense [of sexual or assaultive offenses] may be admitted in the trial of [aggravated sexual assault of a child] for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."  TEX. CRIM. PROC. CODE Ann. art. 38.37, § 2(b) (West 2016).

Here, the instruction permitted the jury to consider extraneous acts "for any bearing [they have] on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."  Appellant argues this instruction caused the jury to wrongfully consider separate extraneous sexual acts appellant performed on Y.H. However, at trial, appellant objected to the jury instruction on the grounds that it failed to comply with rule 404(b), not on grounds associated with article 38.37, and thus his 38.37 argument on appeal does not comport with the objection made at trial.  *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).  Even assuming, without deciding, that appellant preserved this issue for our review, the charge instructed the jury to consider the extraneous offenses for only purposes permitted by the statute.  *See* TEX. CRIM. PROC. CODE Ann. art. 38.37, § 2(b). Accordingly, we overrule appellant's third issue.

### C.    Evidence at Trial

In his ninth issue, appellant argues the trial court erred by overruling his objections to testimony from Y.H. and two defense witnesses as containing extraneous offense evidence of

additional sexual acts perpetrated by appellant on Y.H. He contends the trial court failed to conduct the proper inquiry mandated by article 38.37 before admitting the evidence.

At trial appellant objected to evidence about other sexual activity between appellant and Y.H. as being "inappropriate propensity evidence" in violation of rule 404(b). On appeal he contends the trial court erred by not conducting a hearing outside the presence of the jury as mandated by article 38.27, § 2-a. These objections are not the same. Further, article 38.37 requires that before evidence of separate offenses is introduced, the trial court must conduct a hearing out of the presence of the jury to determine evidence likely to be admitted at trial will be adequate to support finding by the jury that the defendant committed a separate offense beyond a reasonable doubt. *See* TEX. CRIM. PROC. CODE Ann. art. 38.37, § 2-a (West 2016). However, the extraneous offenses at issue were perpetrated against Y.H. and thus the statute did not require any hearing. *See id.* § 1. Specifically, section 1 authorizes the admission of evidence of other crimes committed "by the defendant against the child who is the victim of the alleged offense" that is the subject of a trial for its bearing on "the state of mind of the defendant and the child" as well as "the previous and subsequent relationship between the defendant and the child." *Id.* art. 38.37, § 1(b). Accordingly, we overrule appellant's ninth issue.

### III.    Lesser Included Offense Instruction

In his fourth issue, appellant complains the trial court erred by denying his request to submit an instruction on the lesser included offense of indecency with a child.

A defendant is entitled to an instruction on a lesser included offense if the proof necessary to establish the charged offense also includes the lesser offense and if the record contains some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *See Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). There must be some evidence from which a rational jury could both acquit the defendant of the greater

offense and yet convict him of the lesser included offense. *Id.* at 383. The evidence must establish the lesser included offense as a valid rational alternative to the charged offense. *Id.* at 385. We review a trial court's decision to submit or deny a lesser included offense instruction for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

The jury in appellant's case was instructed to find appellant guilty of aggravated sexual assault of a child if it found he intentionally or knowingly caused the sexual organ of Y.H. to contact appellant's mouth. A person commits indecency with a child when he engages in sexual contact with the child. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2016). "Sexual contact" means "any touching by a person, including touching through clothing, of the genitals of a child." *See id.* § 21.11(c)(1) (West 2016). A person commits aggravated sexual assault of a child when he intentionally or knowingly causes the sexual organ of a child to contact his mouth. *See id.* § 22.021(a)(1)(B)(iii) (West 2016).

Appellant argues the jury heard evidence that would support a finding of indecency with a child and in support points to Y.H.'s testimony that appellant touched her privates and buttocks through her clothes and that Y.H. could not recall if her clothes were on or off when appellant's mouth was on her privates. His argument is similar to that of the appellant in *IslasMartinez v. State*, where IslasMartinez argued the evidence was insufficient to support his conviction for aggravated sexual assault of a child by contact because the "contact" between his sexual organ and his victim's female sexual organ was not flesh-to-flesh but instead was always through clothing. 452 S.W.3d 874, 877 (Tex. App.—Dallas 2014, pet. ref'd). There, we rejected that argument because a requirement that "contact" be flesh-to-flesh would lead to the absurd result that an actor could never be prosecuted for aggravated sexual assault of a child if he contacted a child's bare female sexual organ with his sexual organ while wearing a condom. *See id.* at 879. For the same reason, we reject appellant's argument here. We overrule appellant's fourth issue.

## IV. Exculpatory Evidence

In his fifth issue, appellant argues the trial court erred by failing to compel the State to produce documents related to DNA testing and retesting performed by the State. He argues that not having the requested DNA testing documents meant he could not verify the State's results or subject them to more rigorous examination, which ultimately undermined the presentation of his defense. The State responds that appellant's claim fails because he has not shown the State failed to disclose any evidence known to the prosecution but unknown to the defense or that the purportedly undisclosed evidence was favorable to him or material to the case.

Under *Brady v. Maryland*, the State has an affirmative duty to disclose evidence favorable and material to a defendant's guilt or punishment under the due process clause of the Fourteenth Amendment of the United States Constitution. 373 U.S. 83, 86–87 (1963). To establish a *Brady* violation, the defendant must show (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith, (2) the withheld evidence is favorable to him, and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

Appellant filed a pretrial motion in which he requested production of "copies of all DNA analysis performed by the State . . ., specifically any bedspread and bed area or clothing and any other area tested." The motion also requested "the production and disclosure of all . . . matters . . . which are or may be relevant to the guilt or innocence of the accused . . . [and] any laboratory reports . . . pertaining to any test conducted at the request of the State or any law enforcement agency on physical evidence." Appellant also filed an unsworn motion for continuance a few days before trial, alleging the State had not provided him with "all DNA analysis that it was ordered to produce at pretrial."

Before voir dire proceedings began, appellant objected to moving forward with trial because he had requested and the State had not produced documents regarding "the standard operating procedures and how they changed." Appellant also objected to the State's failure to produce DNA processing worksheets, quantitation results, and electropherogram of controlled samples. Additionally, appellant objected to the State's failure to produce "sample reprocessing information," which he alleged related to the State's retesting some of the evidence in order to determine whether the "tests were done inappropriately."

The State responded that it had provided defense counsel with everything the prosecutor had and that defense counsel "had every opportunity to subpoena the lab himself." The trial court denied appellant's motion for a continuance, noting that all of the items that the defense had requested could have been brought to court by a representative of the State's testing facility by a subpoena. The trial court went on to give defense counsel leave to issue such a subpoena for those items during the course of the trial.

Review of the record does not support appellant's arguments regarding retesting of the evidence. Instead, the State's expert testified that two different tests—serology and DNA testing—were performed on the items of clothing collected from Y.H.

However, even assuming, without deciding, appellant established the State possessed—or had access through a state agency to—evidence that the State failed to disclose, appellant has not established that such evidence was material to the case. *See Pena*, 353 S.W.3d at 809. Appellant argues "the DNA evidence was certainly material since all of the other evidence supposedly connecting [appellant] to the complaining witness is from the complaining witness's testimony." That argument is not borne out by the record, which aside from Y.H.'s testimony, shows that other properly admitted testimony from Y.H.'s mother and the forensic-interviewer established appellant assaulted Y.H. As for appellant's contentions that "[n]ot having the DNA testing

documents meant that defense counsel could not verify the State's results, subject the results to more rigorous examination," the mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *See Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). We overrule appellant's fifth issue.

## V.     Indictment

In his sixth issue, appellant complains the trial court erred by proceeding to trial when no evidence had been produced that appellant actually received a copy of the indictment within the statutorily permitted period. He contends he never received a copy of the indictment and therefore never knew the exact charges against him.

The code of criminal procedure requires (1) the clerk of the court where an indictment has been presented to immediately make a certified copy of the same and (2) the sheriff to deliver that certified copy to the defendant. TEX. CODE CRIM. PROC. ANN. arts. 25.01, 25.02 (West 2016). Texas law also provides the defendant with ten days after service of the indictment to file written pleadings. *Id.* art. 27.12 (West 2016). The purpose of the articles is to afford the accused or his counsel the opportunity to carefully examine the formal accusation and to prepare and file any necessary pleadings relating thereto. *Roberts v. State*, 93 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Before trial, on March 7, 2016, defense counsel objected to proceeding with trial on the grounds that appellant had informed him he had not received a copy of the indictment until the first day of trial. The record shows the sheriff delivered a certified copy of the indictment to appellant on September 5, 2014, over a year before appellant's objection. Additionally, the record shows that in the months since that service and before trial, appellant filed several pre-trial motions. Thus, it is clear that the objectives of article 27.12 have been achieved. *See*

–11–

*Roberts*, 93 S.W.3d at 532 (although appellant was not formally served with copy of indictment until day of trial, defense counsel admitted to receiving indictment at or near time it issued and to having had sufficient time to prepare for trial). We overrule appellant's sixth issue.

## VI. Voir Dire

In his seventh issue, appellant argues the trial court erred by proceeding with voir dire after the State asked venire panel members to commit to the State to being able to prove its case if it produced DNA evidence.

We review a trial court's ruling on an allegedly improper commitment question during voir dire for an abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). A commitment question is one that attempts to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Commitment questions are impermissible unless the law requires a commitment. *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011).

The record reflects the following exchange during voir dire.

Prosecutor: Let's talk about—a little bit about evidence that you hear in a case like this. What kind of evidence do you think we would have? [Prospective juror], what kind of evidence would you expect to hear in a case like this?

Prospective juror: DNA, like sperm.

Prosecutor: DNA, is that a form of evidence that the State can use to prove their case? Does everybody here believe in DNA? Anybody not believe in it? Everybody is okay with it? What other kind of evidence?

Defense counsel: I am going to object, Your Honor. This is an inappropriate commitment question.

Trial court: Overruled.

Nothing in the above exchange demonstrates an attempt by the State to bind or commit the prospective jurors to a verdict based on a hypothetical set of facts. *See Standefer*, 59 S.W.3d

at 179. Instead, the record shows that once the prospective juror suggested DNA evidence, the prosecutor asked questions to determine whether anyone had any opinions regarding DNA evidence and then moved on to ask about what other kinds of evidence could be admitted. Accordingly, we conclude the trial court did not err by overruling appellant's objection. We overrule appellant's seventh issue.

## VII.    Admission of Scientific Evidence

In his eighth issue, appellant complains the trial court erred by admitting the State's DNA report when the State failed to lay the proper predicate for its admission.

### A.    *Applicable Law and  Standard of Review*

Under Texas Rule of Evidence 702, if a witness possesses scientific, technical, or other specialized knowledge that will assist a fact-finder and if the witness is qualified as an expert by knowledge, skill, experience, training, or education, then that expert may testify with an opinion. TEX. R. EVID. 702. Expert testimony is admissible if (1) the expert is qualified, and (2) the testimony is relevant and based on a reliable foundation. *Wooten v. State*, 267 S.W.3d 289, 297 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). To be reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id.* at 297–98.

The proponent of scientific evidence must prove its reliability by clear and convincing evidence. *Id.* at 301. Factors to be considered by the trial court in determining the reliability of scientific evidence include, but are not limited to, the following:

(1) the extent to which the underlying scientific theory and technique are valid and accepted within the relevant scientific community;

(2) the qualifications of the experts testifying;

–13–

(3) availability of media accepting or rejecting the underlying scientific theory or technique;

(4) the potential rate of error in the technique;

(5) the availability of other experts to test and evaluate the technique;

(6) the clarity with which the scientific theory and technique can be explained in court; and

(7) the experience and skill of the person who applied the technique in question.

*Id.*

We review the trial court's determination of whether these requirements are met under an abuse-of-discretion standard. *Id.* at 298. Under this standard, a reviewing court will not disturb a trial court's decision if the ruling was within the zone of reasonable disagreement. *Id.*

B.       *Application of Law to Facts*

During the investigation of appellant, the police took two items of Y.H.'s clothing and buccal swabs from Y.H. and appellant for forensic analysis. At trial, a forensic DNA analyst testified as an expert witness regarding her training, employment, and experience in the areas of serology and DNA analysis. She testified she performed the DNA analysis in this case and supervised the serologist who performed the initial screening work for semen. She described the procedures involved in the initial screening, the DNA analysis, what DNA is, what a DNA profile is, and how comparisons and statistical analyses are performed. She then testified about testing the two items of Y.H.'s clothing. The State then offered copies of the serology report prepared by the serologist and the DNA report she had prepared. Appellant objected to the admissibility of the DNA report under Rule 702 and common law. The trial court overruled appellant's objection, and the expert witness went on to testify that with regard to one of the items of Y.H.'s clothing from which a DNA profile was obtained, she concluded appellant was a match. As for the other item of clothing, appellant could not be excluded.

On appeal, appellant argues the trial court admitted the DNA report "without doing any reliability analysis" or analysis of the factors developed in case law to assess reliability of an expert's testimony. We disagree.

After appellant objected to the admission of the DNA report, the State responded that the expert witness "has already testified in every way she needs to to justify herself as an expert and her methodology with regard to DNA in this case." As discussed above, the expert witness testified extensively as to her training, employment, and experience, and she explained the scientific theory and technique to the jury. To the extent appellant argues that not all of the factors for determining reliability of her report were addressed at trial, he does not cite and we have not found any authority requiring any recitation to reflect the court's separate consideration of each factor. Moreover, such argument is unavailing given the fact that Texas courts have repeatedly held the factors are not exclusive. *See Wooten*, 267 S.W.3d at 301 ("Factors to be considered . . . but are not limited to the following . . ."). We conclude the trial court did not err in overruling appellant's objection. We overrule appellant's eighth issue.

## VIII. Admission of Medical Records

In his tenth and final issue, appellant complains the trial court erred by admitting the medical records concerning Y.H. Appellant contends the State failed to lay the proper predicate for admission of records under the business–records exception to the hearsay rule. He also argues the medical records contained statements that were not related to medical diagnosis or treatment and were therefore inadmissible hearsay.

### A. *Applicable Law and Standard of Review*

Hearsay is a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is inadmissible except as provided by statute or rule.

TEX. R. EVID. 802. Rule 803(4) excepts from the general hearsay rule "statements made for purposes of medical diagnosis or treatment and describing medical history . . . insofar as reasonably pertinent to diagnosis or treatment." *See* TEX. R. EVID. 803(4). Before admitting statements under Rule 803(4), we must consider two factors. *Sandoval v. State*, 52 S.W.3d 851, 856 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). First, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment. *Id.* Second, the content of the statement must be such as is reasonably relied upon by health providers in treatment or diagnosis. *Id.*

In determining whether a trial court erred in admitting or excluding hearsay evidence under such an exception to the hearsay rule, we look to see whether the trial court clearly abused its discretion. *Taylor v. State*, 268 S.W.3d 571, 580 (Tex. Crim. App. 2008). Before reversing the trial court's decision, we must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Id.*

B.    *Application of Law to Facts*

At trial, appellant objected to the admission of Y.H.'s medical records as submitted without "the appropriate predicate . . . [pursuant to] Texas Rules of Evidence 803." He also objected to statements within the medical records that he alleged were not related to medical diagnosis or treatment. Rule 803 provides for multiple exceptions to hearsay, including statements made for purpose of medical diagnosis or treatment and for business records. Appellant failed to preserve the complaint he now mounts regarding the business records as he never informed the court that he objected on that basis. He did, however, preserve his complaint regarding medical diagnosis or treatment by directing the court's attention to that complaint. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Nevertheless, that argument fails for two reasons.

–16–

First, appellant's complaint that statements that indicate the identity of an individual who committed sexual abuse are irrelevant to medical treatment, not related to medical diagnosis, and go beyond determination of the cause of injury misreads the governing cases.[1] The identity of the perpetrator of sexual abuse may be pertinent to a medical examination because it is important for a physician to discover the extent of the child's emotional and psychological injuries, particularly when, as here, the perpetrator is a member of the child's household and to avoid further injury. *See Taylor*, 268 S.W.3d at 591.

Second, the error here, if any, was harmless, as prior to the medical doctor's testimony, Y.H. testified about appellant's sexual assault of her and the forensic-interviewer testified regarding Y.H.'s outcry and identification of appellant as her assailant. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ("Moreover, any error in admitting the evidence was harmless in light of other properly admitted evidence proving the same fact."). We overrule appellant's tenth issue.

MODIFICATION OF JUDGMENT

The State notes by cross-point that the judgment should be modified to accurately reflect appellant's plea of not true to an enhancement paragraph and the jury's resulting finding of true. The record reflects appellant entered a plea of not true to the enhancement paragraph, and the jury found the enhancement paragraph true. However, the judgment indicates no plea or finding on the first enhancement paragraph. We have the authority to modify the trial court's judgment in order to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we modify the judgment as follows: (1) the plea

---

[1] Although appellant does not challenge Y.H.'s or her mother's motives in making these statements, we note that it is only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest. *C.f. Taylor*, 268 S.W.3d at 589; *Sandoval*, 52 S.W.3d at 857 ("In circumstances where the parent is giving the information to assist in the diagnosis and treatment of the child, we think the reliability of the statements is very high.").

–17–

to the first enhancement paragraph should read "not true," and (2) the finding on the first enhancement paragraph should read "true."

## CONCLUSION

As modified, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

160422F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NOLAN LAVON JOHNSON, Appellant

No. 05-16-00422-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas

Trial Court Cause No. F14-48249-M.

Opinion delivered by Justice Schenck, Justices Francis and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

(1) the plea to the first enhancement paragraph should read "not true," and
(2) the finding on the first enhancement paragraph should read "true."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of July, 2017.